428 S.E.2d 542

**DAIRYLAND INSURANCE COMPANY, a Corporation, Plaintiff Below, Appellee,**

v.

**Leanne Brookover VOSHEL, Defendant Below, Appellee,**

v.

**Roger L. WINGROVE, Third–Party Defendant Below, Appellant.**

**No. 21279.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided March 12, 1993.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for the appellee, Dairyland Ins. Co.

Blaine Myers, Parkersburg, for the appellee, Leanne Brookover Voshel.

J.C. Powell, Charleston, for appellant.

**BROTHERTON, Justice:**

The appellant, Roger Wingrove, files this petition for appeal from the April 10, 1992, order of the Circuit Court of Wood County which ruled that Dairyland Insurance Company had no duty to defend or insure any claim arising from the automobile accident which forms the basis of the underlying case.

The appellee, Leanne Brookover Voshel, then Leanne Wright, bought an automobile insurance policy from Dairyland Insurance Company with an effective date February 24, 1986, through February 24, 1987. The vehicle insured by that policy was a 1979 Chevette which she owned, although she was not a licensed driver. The policy listed Allen Brookover as the driver for the purpose of the policy. The insurance policy covered bodily injury, liability, and property damage with limits of $20,000/$40,000/$10,000, uninsured motorist coverage of $20,000/$40,000/$10,000, and medical payments of $1,000 per person. There was no underinsured motorist coverage. The policy specifically provided that it could cover all cars owned by the policy holder if the policy holder advised them of the replacement or addition of cars within thirty days of the acquisition. The policy further provided that:

> When you're involved in a car accident, you or someone on your behalf must notify us as soon as possible. The quickest way is to phone our nearest office.... If we need other information to investigate the accident, we'll ask you for it. We may require it in writing.
>
> \*　\*　\*　\*　\*　\*
>
> You must cooperate with us in our effort to investigate the accident or loss, settle any claims against you and defend you. You must also send us, promptly, any legal papers served on you or your representative as a result of a car accident. If you fail to cooperate or fail to promptly send us such legal papers, we may have the right to refuse you any further protection for the accident or loss.

On May 3, 1986, Leanne Wright married Allen Brookover and shortly thereafter informed Dairyland of the change of name. On February 7, 1987, Allen Brookover was killed while he was driving a 1967 Chevrolet pickup truck on W.Va. State Route 68 in Wood County. The accident occurred when he hit a 1977 Ford farm tractor being operated by James Sandy. Allen Brookover and two passengers, Roger Brookover and Robert Buffington, were burned to death when the pickup truck caught fire. The

appellant, Roger Wingrove, another passenger, was severely burned. Mr. Wingrove did not own a car and thus, had no automobile liability insurance.

At the time of the accident, the pickup truck was not registered to the Brookovers with the West Virginia Department of Motor Vehicles and no contact had been made with Dairyland advising them that the Brookovers had purchased a new vehicle to be insured. It is unclear when Allen Brookover bought the 1967 pickup, since he paid in cash, although it appears it was purchased two weeks prior to the accident. There was an assignment of certificate of title on the pickup in June, 1986, when the president of the Worthington Golf Club executed that certificate, but the name and address of the purchaser were not included on the title, nor was the odometer reading noted or the certificate of title notarized. Evidence adduced in the proceeding below indicates that the pickup was a non-operational "junk vehicle" while owned by the Golf Club.

On October 17, 1988, Roger Wingrove filed suit against Leanne Brookover, as administratrix of the Estate of Allen Brookover, and General Motors on a crash worthiness theory, in the Circuit Court of Wood County. Mrs. Brookover was served on October 28, 1988, and she filed an answer on December 12, 1988, after hiring David Charonis as her lawyer. It was not until January 17, 1989, that Dairyland was notified. On that date, Mr. Charonis wrote Dairyland notifying them of the pending lawsuit by Wingrove and advising Dairyland to "take appropriate action that you deem necessary to protect your interests." However, Dairyland claims that the correspondence made no reference to the 1967 pickup truck and "contained no assertion that the truck was insured under the Dairyland policy or was a newly acquired vehicle subject to coverage under the policy."[1]

On January 30, 1989, Dairyland received notice of the accident by a General Motors crossclaim in the civil suit. Although Dairyland claims this was the first time they were advised of the accident, the appellees state that this is untrue and they were informed of the accident by the earlier letter of Mr. Charonis. Regardless, on February 7, 1989, Mr. Charonis wrote Dairyland complaining that nothing had been done regarding the claim.

On March 2, 1989, Dairyland responded, advising that it was investigating coverage and noting that Mrs. Brookover had been delinquent in notifying Dairyland. Thereafter, on May 23, 1989, Dairyland claimed that it had just learned that the 1967 pickup was a newly acquired vehicle, four months after the alleged telephone conversation with Mr. Charonis.

On May 24, 1989, Dairyland wrote Mrs. Brookover, advising her that it was proceeding under a "Reservation of Rights" clause because of her failure to assist and cooperate in the defense of the claim. Thereafter, on September 20, 1989, Dairyland filed a declaratory judgment action to determine whether there was a duty to insure and defend Mrs. Brookover. Apparently, Mr. Wingrove was not served, and Mrs. Brookover's deposition was taken before Mr. Wingrove was advised of the action. In her deposition, Mrs. Brookover stated that she knew little about the purchase of the pickup truck, noting that she thought her husband had paid cash for it and she had no canceled check or bill of sale.

On June 14, 1990, upon learning of the denial of insurance coverage and the pending declaratory judgment action, Mr. Wingrove filed a motion to intervene in. the underlying suit. On June 25, 1990, an agreed order was entered permitting Mr. Wingrove to intervene as a third party defendant in the declaratory judgment action.

By opinion dated February 10, 1992, and subsequent order dated April 10, 1992, the Circuit Court of Wood County ruled that the Dairyland insurance policy was in full

---

1. Dairyland argues that it was not until a phone conversation between Mr. Charonis and Linda Mays of Century Claims Service, sometime between January 17, 1989, and March 2, 1989, that Dairyland was first advised that the Brookovers' accident involved a 1967 Chevrolet pickup truck and that the truck might be a newly acquired vehicle.

force and effect on February 7, 1987, and that the Chevrolet pickup was an insured motor vehicle under the terms of the coverage. However, the court further stated that Mrs. Brookover had not properly notified Dairyland until suit was filed by Mr. Wingrove. Thus, Dairyland had no duty to defend or insure any claim arising from the February 7, 1987, accident. Mr. Wingrove filed this appeal to determine: (1) whether there is any insurance coverage on the part of Dairyland, (2) whether Dairyland suffered any prejudice by Mrs. Brookover's failure to notify them promptly, and (3) whether the denial of coverage by Dairyland was just.

Dairyland argues that it was not obligated to provide coverage since it was not advised of the purchase of the pickup truck until approximately January 17, 1989, almost two years after the accident. Actual notice of the accident did not occur until sometime between January 17, 1989, and May 23, 1989, approximately two years after the accident.

The appellant seems to contend that since the accident was widely covered on the television news and in the newspaper, the agent who sold the policy to the Brookovers should have initiated an investigation or contacted Mrs. Brookover. The appellant argues that although Dairyland may not have been expressly notified of the purchase of the new truck until May 23, 1989, Dairyland was on reasonable and sufficient notice to inquire as to what vehicle was involved in the accident after receiving the January 17, 1989, letter from Mr. Charonis.

Dairyland counters that the insurance policy required that it be notified "as soon as possible," and that two years after the accident was not "as soon as possible."[2] In *State Auto Mutual Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), we discussed insurance policy notification provisions. The Court concluded that "regardless of the language used (in the policy), whether 'immediate,' 'prompt,' 'forthwith,' 'as soon as practicable' or words of similar import, the courts are generally in agreement that reasonable notice is sufficient." (Citations omitted.) *Id.* at 561, 396 S.E.2d at 742. The issue of whether Mrs. Brookover notified the insurance company about the accident within a reasonable time period, given the facts of this particular case, is a question for the finder of fact. *Id.*

■ *Youler* explained that the purpose of notice provisions in an insurance policy was to give the insurer an opportunity to make a timely and adequate investigation of the circumstances surrounding the accident in question. *Id.* The authorities are split as to whether prejudice to the insurer is necessary in order to deny underinsured or uninsured coverage for delay in notifying the insurer of the accident.

In an uninsured or underinsured motorist case, prejudice to the investigative interests of the insurer is a factor to be considered, along with the reasons for delay and the length of delay, in determining the overall reasonableness in giving notice of an accident. In the typical case, the insured must put on evidence showing the reason for the delay in giving notice. Once this prerequisite is satisfied, the insurer must then demonstrate that it was prejudiced by the insured's failure to give notice sooner. If the insurer fails to present evidence as to prejudice, then the insured's failure to give notice sooner will not be a bar to the insured's recovery. If the insurer puts on evidence of prejudice, however, the reasonableness of the notice ordinarily becomes a question of fact for the fact finder to decide.

*Youler*, 183 W.Va. at syl. pt. 2, 396 S.E.2d at syl. pt. 2. This case, however, involves a straightforward liability claim against the Brookovers policy, since Mr. Wingrove had no insurance coverage of his own.

Unlike underinsured claims, which by definition must involve another insurance

---

**2.** We do not reach the issue of whether the 1967 pickup truck was an insured vehicle under the terms of the Dairyland policy. As discussed in the text of this opinion, the determination of the insured status of the truck hinges on facts not in evidence before this Court. Further, those facts are missing, due in part, at least, to the lack of timely notice and the unavailability of a witness who could identify when the vehicle was bought by Mr. Brookover and ultimately, whether the accident occurred within the thirty-day period for notification for a newly acquired vehicle.

company, a liability claim may not involve any other insurance company. With no other insurance companies involved, the insurer is more likely to be prejudiced by the delay because there is no other party charged with investigating the accident. Further, the appellant's argument that the official police investigation should be sufficient for the insurer's investigative purposes is erroneous. While some of the information obtained by the State police might be useful in an insurance investigation, there are other facts relevant to the policy which the State police would have little or no interest in pursuing.

■ In cases which involve liability claims against an insurer, several factors must be considered before the Court can determine if the delay in notifying the insurance company will bar the claim against the insurer. The length of the delay in notifying the insurer must be considered along with the reasonableness of the delay. If the delay appears reasonable in light of the insured's explanation, the burden shifts to the insurance company to show that the delay in notification prejudiced their investigation and defense of the claim. If the insurer can produce evidence of prejudice, then the insured will be held to the letter of the policy and the insured barred from making a claim against the insurance company. If, however, the insurer cannot point to any prejudice caused by the delay in notification, then the claim is not barred by the insured's failure to notify.

■ In this case, no explanation was given which would make an almost two-year delay appear reasonable. Further, Dairyland presented evidence of prejudice caused by the delay. Mr. Nutter, one of the two previous owners of the 1967 pickup after the Golf Club's ownership, cannot be found, making the chain of title difficult to establish. The chain of title is critical to establishing whether the truck was an insured vehicle under the terms of the policy, which required that the insured be notified of newly acquired vehicles within thirty days of acquisition. Because the truck was bought with cash and because Mr. Brookover is dead and the previous owner unavailable, it is unknown whether the truck was purchased more than thirty days prior to the accident. Complicating the problem was the improper truck registration.[3] Without that evidence, it is unclear whether the truck was a registered vehicle within the terms of W.Va.Code § 17A–3–1 *et seq* and this policy.

Consequently, we affirm that portion of the lower court's ruling which denied the insured coverage based upon the insured's failure to notify Dairyland "as soon as possible." We do not rule on the issue of whether the truck was an insured vehicle under the policy since many of the facts relating to the registration and ownership of the truck are missing due to the death of Allen Brookover and the failure to discover the whereabouts of the previous owner of the pickup.

Accordingly, we affirm, in part, the April 10, 1992, order of the Circuit Court of Wood County.

Affirmed.

---

**3.** Dairyland also argues there was no duty to provide coverage because the 1967 pickup truck was not a vehicle as defined by the policy. Although we do not reach this issue, it provides relevant background information. The Dairyland policy defines a car as a "4-wheel motor vehicle licensed for us on public roads." To be licensed in this State, a certificate of title must be obtained for that vehicle. West Virginia Code § 17A–3–1 *et seq.* (1991) sets out the requirements necessary to obtain a certificate of title, which include the name of the purchaser and the odometer reading. Dairyland notes that this information was absent from the certificate of title of the pickup truck. The truck driven by Mr. Brookover on the date of the accident was still titled in the name of the Worthington Golf Club, although the truck had been owned by two other individuals between the time Worthington last owned the truck and the time Allen Brookover bought it. West Virginia Code § 17A–3–1 provides that the purchaser of a registered vehicle may operate that vehicle for only ten days following the purchase. After that ten-day period has expired, the registration of the previous owner and the vehicle is terminated. Thus, the operation of the vehicle outside of that ten-day period is illegal and a misdemeanor.