# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2025 Term

_____

No. 24-ICA-441

_____

**FILED**

**November 13, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

G&G BUILDERS, INC.,
Plaintiff/Counterclaim Defendant/Cross-Claimant/Third-Party Plaintiff Below, Petitioner,

v.

CENTRAL MUTUAL INSURANCE COMPANY,
Third-Party Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Cabell County, West Virginia
Honorable Gregory L. Howard, Judge
Civil Action No. CC-06-2014-C-250

AFFIRMED in part, REVERSED in part, and REMANDED with directions
_____

Submitted:  October 7, 2025
Filed:  November 13, 2025

Brent K. Kesner, Esq.
Ernest G. Hentschel, Esq.
Kesner & Kesner, PLLC
Charleston, West Virginia
Counsel for Petitioner

Mychal S. Schulz, Esq.
Babst, Calland, Clements & Zomnir, PC
Charleston, West Virginia
Counsel for Respondent

_____

AND

_____

No. 25-ICA-42
_____

G&G BUILDERS, INC.,
Plaintiff/Counterclaim Defendant/Cross-Claimant/Third-Party Plaintiff Below, Petitioner,

v.

BUILDERS PREMIER MUTUAL INSURANCE COMPANY,
Third-Party Defendant Below, Respondent.
_____

Appeal from the Circuit Court of Cabell County, West Virginia
Honorable Gregory L. Howard, Judge
Civil Action No. CC-06-2014-C-250


AFFIRMED in part, REVERSED in part, and REMANDED with directions
_____


Submitted:  October 7, 2025
Filed:  November 13, 2025

Brent K. Kesner, Esq.               W. Gus Saines, Esq.
Ernest G. Hentschel, Esq.           R. Gregory McDermott, Esq.
Kesner & Kesner, PLLC               McDermott & Bonenberger, PLLC
Charleston, West Virginia           Wheeling, West Virginia
Counsel for Petitioner              Counsel for Respondent

_____

AND

_____

No. 25-ICA-111

_____

CENTRAL MUTUAL INSURANCE COMPANY,
Third-Party Defendant Below, Petitioner,

v.

G&G BUILDERS, INC.,
Plaintiff/Counterclaim Defendant/Cross-Claimant/Third-Party Plaintiff Below,
Respondent.

_____

Appeal from the Circuit Court of Cabell County, West Virginia
Honorable Gregory L. Howard, Judge
Civil Action No. CC-06-2014-C-250

REVERSED and REMANDED with directions

_____

Submitted:  October 7, 2025
Filed:  November 13, 2025

Mychal S. Schulz, Esq.                    Brent K. Kesner, Esq.
Babst, Calland, Clements & Zomnir, PC     Ernest G. Hentschel, Esq.
Charleston, West Virginia                 Kesner & Kesner, PLLC
Counsel for Petitioner                    Charleston, West Virginia
                                          Counsel for Respondent

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Judge:

Petitioner G&G Builders ("G&G") appeals the October 3, 2024, and December 30, 2024, orders of the Circuit Court of Cabell County awarding summary judgment to Respondent Builders Premier Mutual Insurance Company ("Builders") and Respondent Central Mutual Insurance Company ("Central") as to G&G's separate claims against them for breach of contract, common law bad faith, and violations of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code §§ 33-11-1 to -10 (2005).[1] Separately, Central appeals the circuit court's May 28, 2024, order granting G&G's motion for summary judgment on coverage issues.[2]

As these appeals relate to the same construction project, arise out of the same civil action, and involve similar issues, on its own motion, this Court consolidates the appeals in 24-ICA-441, 25-ICA-42, and 25-ICA-111 for consideration and decision. Further, we recognize that the appeal filed by Central (25-ICA-111) is the appeal of an

---

[1] In 24-ICA-441, G&G appeals the circuit court's October 3, 2024, Order Granting Motion for Summary Judgment of Central Mutual Insurance Company on G&G Builders, Inc.'s Claims for Breach of Contract, Common Law Bad Faith, and Unfair Trade Practices. In 25-ICA-42, G&G appeals the circuit court's December 30, 2024, Order Granting Motion for Summary Judgment of Builders Premier Mutual Insurance Company on G&G Builders, Inc.'s Claims for Breach of Contract, Common Law Bad Faith, and Unfair Trade Practices.

[2] In 25-ICA-111, Central appeals the circuit court's May 28, 2024, Order Granting G&G Builders, Inc.'s Motion for Summary Judgment and Denying Central Mutual Insurance Company's Motion for Summary Judgment on Coverage Issues.

1

interlocutory order, for which this Court lacks jurisdiction. However, given the posture of these cases, in the interests of expediting a ruling, for judicial efficiency and economy, and for good cause shown, pursuant to Rule 2 of the West Virginia Rules of Appellate Procedure, we convert Central's petition for appeal and the arguments raised therein to cross-assignments of error in response to G&G's petition for appeal against Central (24-ICA-441) and will consider Central's arguments accordingly.

On appeal, G&G contends that the circuit court erred in finding no valid claim for breach of contract against Central and Builders and in its application of the Supreme Court of Appeals of West Virginia's ("SCAWV") ruling in *Soaring Eagle Development Co., LLC v. Travelers Indemnity Co. of America*, 19-0841, 2020 WL 6131741 (W. Va. Oct. 19, 2020) (memorandum decision). Further, G&G argues that the circuit court erred in failing to apply the collateral source rule and in its "refusal" to permit G&G to complete discovery with respect to its breach of contract, common law bad faith, and UTPA claims.

Based upon our review of the record, applicable law, and the written and oral arguments of counsel, we affirm, in part; reverse, in part; and vacate, in part, the circuit court's rulings.[3] Generally, we find the consolidated cases herein wholly

---

[3] We acknowledge and extend our appreciation to the West Virginia Insurance Federation, which filed a brief as amicus curiae.

distinguishable from *Soaring Eagle*, which was misconstrued by the circuit court to preclude G&G's claims for breach of contract, common law bad faith, and violations of the UTPA. Accordingly, we reverse the circuit court's rulings in this regard and remand this matter to circuit court for additional proceedings consistent with this opinion. As to G&G's claims that the circuit court erred in finding the collateral source rule inapplicable, we disagree and find no error. Because we have remanded this matter to circuit court, we defer to the circuit court's determination as to the need for additional discovery on the issues of breach of contract, common law bad faith, and violations of the UTPA.

With regard to Central's arguments that the circuit court erred in determining that G&G's provision of notice to Central regarding the underlying claims was reasonable, we agree. Specifically, we find error in the circuit court's determination of reasonableness of notice, as such a determination was a question of fact for a jury to decide. Accordingly, we reverse the circuit court's ruling in this regard, remand the matter to circuit court, and direct that the issue of reasonableness of notice be presented to a jury for determination.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Each of the underlying cases in these consolidated appeals relate to the design and construction of a residence, owned by Randie and Deanna Lawson ("Lawsons"), in Milton, West Virginia. Construction of the residence began in late 2010 ("Lawson project"), with G&G serving as the general contractor. In building the residence,

3

the Lawsons contracted with several subcontractors/material suppliers to complete work on the project, including Archetype Builders, Inc. ("Archetype") and Stone by Lynch & Design, LLC ("SBL")[4]. The separate contractual agreements between the Lawsons and SBL and the Lawsons and Archetype contained a provision titled "G&G Builders, Inc. Special Conditions[.]" This provision contained indemnification and insurance requirements as follows:

> **INDEMNIFICATION:** To the full extent permitted by law, Contractor/Material Supplier[5] agrees to save, indemnify, and hold harmless the Owner's Representative and the Owner and their agents, employees, officers, directors, engineers, architects, and surveyors from any and all liability, suits, claims, demands, costs, loss of expense, judgments or demands for damages, including actual attorney[']s fees, whether arising before or after completion of the Contractor/Material Supplier's Work caused by, arising out of, resulting from, or occurring in connection with the performance of the Work or any activities associated with the Work by the Contractor/Material Supplier, its Subcontractors, suppliers or their agents or employees, or from any activity of the Contractor/Material Suppliers, its Subcontractors, suppliers or their agents or employees at the Site, whether or not caused in whole or in part by the active or passive negligence, fault, or any other grounds of legal liability of a party indemnified hereunder.

---

[4] There are multiple versions of the corporate name of SBL throughout the consolidated appeals. For example, SBL is known as Stone by Lynch, LLC in the Central policy. SBL as referred to in this opinion shall be read to include the multiple versions of SBL's corporate name referenced in the records herein.

[5] The agreement between SBL and the Lawsons included references to the following parties: SBL was identified as "Contractor/Material Supplier[;]" the Lawsons were identified as "Owners[;]" and G&G was identified as "Owner's Representative[.]" Similar references were included in the agreement between Archetype and the Lawsons, except that Archetype was identified as "SubContractor/Material Supplier" and G&G was identified as "Contractor."

4

In the case of claims against the Owner's Representative, the Owner, or their agents and employees by any employee of the Contractor/Material Supplier, anyone directly or indirectly employed by the Contractor/Material Supplier, or anyone for whose acts it may be liable, the indemnification obligation under this Attachment A shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor/Material Supplier under workers' compensation acts, disability benefit acts.

.   .   .

**INSURANCE:** Before Contractor/Material Suppliers does any work at or prepares or delivers material to the site of construction, the Contractor/Material Supplier agrees to obtain and continue in force while performing work hereunder, at its own expense, the insurance coverage set forth below, with companies authorized to do business in the State of West Virginia with full policy limits applying, but not less than, as stated. A certificate of insurance naming Owner's Representative, Owner, engineers, architects, and surveyors, their subsidiaries and affiliates, as well as their up stream parents, as an additional named insured and evidencing the following coverage[s], specifically quoting the indemnification provision set forth in this Agreement, shall be delivered to Owner's Representative prior to commencement of the work. The additional named insured endorsement shall be endorsed as primary coverage on Contractor/Material Suppliers' commercial general liability and excess Insurance policy. Such certificate shall provide that any change restricting or reducing coverage or the cancellation of any policies under which certificates are issued shall not be valid with respect to Owner's Representative's interest therein until Owner's Representative has received sixty (60) days[6] written notice of such change or cancellation.

---

[6] In the G&G Builders, Inc. Special Conditions attached to the contract between Archetype and the Lawsons, this is "thirty (3) days written notice."

SBL began work on the Lawson project on May 5, 2011. From July 8, 2010, to July 8, 2011, SBL was insured under a commercial general liability policy of insurance issued by Central and identified as policy number CLP8886235.[7] On May 5, 2011, a certificate of insurance ("COI") was issued by Central (through its agent Central Carolina Insurance) to G&G for the Lawson project. The COI contained the following limitations:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

Like SBL's insurer, on August 11, 2011, Archetype's insurer (through its agent KWT Insurance) provided G&G with a COI containing the same limitations

---

[7] While not relevant to this appeal, SBL became insured under a policy of insurance issued by Cincinnati Insurance Company when the policy period of the Central policy at issue expired on July 8, 2011. Cincinnati was named as a third-party defendant by G&G below, but is not a party to any of the consolidated appeals. In its brief before this Court, Central alleged that "[t]he overwhelming amount of the work performed" by SBL on the Lawson project "took place after July 8, 2011, which work accounted for approximately 81% of the [total] amounts charged by SBL for the work performed" on the Lawson project.

appearing in SBL's COI.[8] These COIs qualified G&G as an additional insured and indemnitee under SBL's Central policy and Archetype's Builders policy for claims arising out of the work performed by SBL and Archetype on the Lawson project.

On March 20, 2014, G&G filed the underlying complaint against the Lawsons seeking compensation for work G&G completed on the Lawson project.[9] Specifically, G&G sought recovery of a mechanic's lien from the Lawsons in the amount of $303,686.31, plus pre- and post-judgment interest.[10]

In response to G&G's complaint, the Lawsons filed an answer, counterclaim, and crossclaim.[11] In their counterclaim, the Lawsons generally alleged that

---

[8] At all times relevant hereto, Archetype was insured under a policy of insurance issued by Builders and identified as policy number PCP 00094601.

[9] HB Fuller and Newtech were also named Defendants in G&G's complaint but are not parties in any of the consolidated appeals.

[10] G&G also sought recovery of "other damages[,]" which included "extra and additional payroll costs, overhead costs, home office administrative costs, loss of profit, loss of interest on amount due, damage to [G&G]'s business reputation, annoyance and inconvenience suffered as a result of the acts and omissions and/or unjust enrichment" of the Lawsons, HB Fuller, and Newtech.

[11] After filing its initial complaint, G&G moved the circuit court to compel the parties to engage in arbitration and, further, moved to dismiss the Lawsons' counterclaim against G&G. Said motions were denied by order of the circuit court dated August 20, 2015. G&G then appealed the circuit court's August 20, 2015, order to the SCAWV. In 2016, the SCAWV issued an opinion in which it affirmed the circuit court's refusal to compel arbitration and refusal to dismiss the Lawsons' counterclaim against G&G. *See G&G Builders, Inc., v. Lawson*, 238 W. Va. 280, 794 S.E.2d 1 (2016).

G&G failed to provide adequate supervision for the Lawson project and failed to oversee and require that the project be completed in a good and workmanlike manner. Further, the Lawsons alleged that G&G failed to provide supervision of employees, contractors, and subcontractors "to assure that proper materials, equipment and appliances" were used in the Lawson project. Within the counterclaim, the Lawsons identified deficiencies within the Lawson project, including

> damage to the wood work, stone is cracked and broken, windows leak, chimney leaks, patio is damaged, electronics in the house do not function correctly, finish work needs replaced, the tile is defectively installed and needs replaced with proper grout which is not defective, and other significant defects and failure of performance.

G&G contends that the general allegations in the Lawsons' counterclaim "did not provide a detailed analysis or description of each claimed defect or indicate when any allegedly defective work was performed" and, accordingly, the parties were required to conduct discovery in order to identify the claimed defects and the responsible subcontractors/suppliers. Throughout the discovery process,[12] once specific defects were identified by the Lawsons, G&G demanded defense and indemnification from the subcontractor/supplier responsible for that defect and its insurer, based upon the contracts each subcontractor/supplier executed with the Lawsons. When any subcontractor/supplier or insurer refused G&G's demand for defense and indemnification, G&G filed a third-

---

[12] The discovery process did not begin until 2017, following the SCAWV's issuance of its opinion in *G&G v. Lawson*. *See* fn. 9 *supra.*

8

party complaint against the subcontractor/supplier and its insurer seeking indemnification from the subcontractor/supplier and, where applicable, raising claims against the insurer for breach of contract, common law bad faith, and violations of the unfair trade practices act.

On March 5, 2020, G&G filed its Third Amended Third-Party Complaint asserting claims for breach of contract, common law bad faith, and violations of the UTPA against Central. In this complaint, G&G sought a declaratory judgment that Central was obligated to provide G&G a defense and indemnification for the claims asserted by the Lawsons. However, in its Fourth Amended Third-Party Complaint (filed on April 26, 2021), while G&G restated its previously alleged claims for breach of contract, common law bad faith, and violations of the UTPA against Central, it made no request for a declaratory judgment against Central. Additionally, in its Fourth Amended Third-Party Complaint, G&G asserted claims for bad faith, breach of contract, and UTPA violations against Builders, but made no accompanying request for a declaratory judgment against Builders.[13]

Nevertheless, in November of 2021, G&G filed separate motions for summary judgment on the insurance coverage issues against Builders and Central.

---

[13] Builders allege that before the filing of its Fourth Amended Third-Party Complaint, G&G "had never even notified Builders of the litigation it initiated . . . in 2014, or tendered the litigation to Builders requesting defense and coverage."

Builders responded by asserting that summary judgment was premature and that its policy issued to Archetype did not extend to provide coverage to G&G. Central filed its own competing motion for summary judgment on coverage issues and responded to G&G's motion by denying that its policy provided coverage to G&G for the underlying loss because G&G failed to comply with the notice requirements set forth in the Central policy.[14]

A hearing on these motions for summary judgment was held before the circuit court on February 11, 2022. At the conclusion of the hearing, the court found in favor of G&G on all coverage issues; however, it was not until April 29, 2024 (Builders),[15] and May 28, 2024 (Central), that the circuit court entered its orders granting G&G's motions for summary judgment on the issue of coverage.[16]

---

[14] We note that Central has conceded (for the purpose of its motion for summary judgment on coverage below and now in relation to both consolidated appeals in which it is a party) that SBL obtained insurance coverage under the Central policy that covered the work it performed at the Lawson residence. Additionally, Central specifically recognized SBL's indemnification obligation to G&G (under the contract between SBL and the Lawsons) and, further, acknowledged that a COI was issued by Central's agent that reflected G&G Builders to be an additional insured under the Central policy issued to SBL. Thus, below, Central did not dispute the existence of coverage to G&G under the Central Policy issued to SBL, but argued that such coverage was not applicable, as G&G did not provide timely notice to Central of the claims of the Lawsons.

[15] Builders did not appeal the circuit court's April 29, 2024, order awarding G&G summary judgment on the coverage issue.

[16] On July 15, 2024, Central filed a Petition for Writ of Prohibition before the SCAWV to prohibit enforcement of the circuit court's May 28, 2024, order. Central's petition was refused by SCAWV order dated January 21, 2025. Central then appealed the

10

Following the circuit court's award of summary judgment to G&G on coverage issues, but before entry of the orders awarding G&G this relief, the parties below engaged in settlement negotiations. On September 30, 2022, the Lawsons entered into a Settlement Agreement and Mutual Release with Builders, wherein Builders paid the Lawsons the sum of $40,000 for settlement of all claims against Archetype and G&G (related to the work completed by Archetype on the Lawson project). That same day, the Lawsons entered into a Settlement Agreement and Mutual Release with G&G and SBL, resolving all their claims against SBL and G&G "caused by, arising out of, resulting from, occurring in connection with, derivative of, and/or related to the work and/or work product of [SBL] in connection with the construction or repair" of the Lawson residence. As consideration for the settlement of their claims against SBL and G&G, the Lawsons were paid $1,425,000 ($1,325,000 paid by Cincinnati; $100,000 paid by Central). As a part of the settlement agreement, G&G agreed to release $250,000 of its $303,686.31 mechanics

circuit court's May 28, 2024, order to this Court. Per Central, this Court "refused to docket" that appeal "based on Central's representation in the [n]otice of [a]ppeal" that the May 28, 2024, order "was not a final order and had not been certified by the circuit court as a final and appealable order."

Thereafter, Central filed a motion in circuit court for certification of the May 28, 2024, order as a final appealable order under Rule 54(b) of the West Virginia Rules of Civil Procedure. In that proceeding, G&G filed an objection to Central's motion for certification, noting that Central's initial appeal of the May 29, 2024, order was properly refused by this Court and further argued that the May 28, 2024, order was "not final in its nature and effect because it left G&G's breach of contract, bad faith and UTPA [claims] against Central." Despite G&G's objection, the circuit court certified, by order entered March 4, 2025, its May 28, 2024, order, under Rule 54(b). Central then refiled its underlying appeal with this Court and the appeal was accepted.

11

lien against the Lawsons.[17] Thus, the claims against the Lawsons, SBL, and Archetype (including the derivative claims against G&G related to SBL and Archetype's work on the Lawson project) were resolved fully by settlement on September 30, 2022.

On October 7, 2022, Central filed its motion for summary judgment as to G&G's claims against it for breach of contract, common law bad faith, and UTPA violations. Oral argument on this motion was held before the circuit court on December 6, 2022; however, the court did not enter its order granting Central's motion for summary judgment until October 3, 2024. It was not until September 14, 2024, that Builders filed its motion for summary judgment as to G&G's claims against it for breach of contract, common law bad faith and UTPA violations. A hearing on Builders' motion was held before the circuit court on November 18, 2024, and the order granting Builders' motion was entered on December 20, 2024. In both the October 3, 2024, and December 30, 2024, orders, the circuit court included conclusions of law finding the SCAWV's memorandum decision in *Soaring Eagle* dispositive of G&G's breach of contract, bad faith, and UTPA claims.

---

[17] The language of the Settlement Agreement and Mutual Release executed by the Lawsons on September 30, 2022, noted the parties' agreement that "[i]n exchange for" payment of $1,425,000 "plus the agreement of G&G to release" $250,000 "of its contractual claim and interest against the Lawsons, the Lawsons have agreed to resolve their claims against [SBL] and G&G."

It is from the December 30, 2024, and October 3, 2024, orders awarding summary judgment to Builders and Central on G&G's claims for breach of contract, common law bad faith, and violations of the UTPA that G&G now appeals. On appeal, Central seeks relief from the circuit court's May 28, 2024, order.

## II.     JURISDICTION

It is well established that the West Virginia Intermediate Appellate Court ("ICA") is a court of limited appellate jurisdiction. As the SCAWV acknowledged in *James M.B. v. Carolyn M.*, 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995), "[a] court of limited appellate jurisdiction is obliged to examine its own power to hear a particular case." Thus, we begin our review of the consolidated cases by establishing our jurisdiction to review such cases.

As to the ICA, the SCAWV has consistently acknowledged that the West Virginia "Legislature set out the ICA's limited jurisdiction in West Virginia Code § 51-11-4, which includes a paragraph that deprives the ICA of jurisdiction over eleven matters . . . includ[ing] interlocutory appeals." *Danny Webb and Danny Webb Construction Co., Inc., v. North Hills Group, Inc.*, 251 W. Va. 402, ___, 914 S.E.2d 275, 282 (2025). The SCAWV has specifically held, as set forth in syllabus point two of *Webb*, that "[t]he [ICA] generally does not have appellate jurisdiction over interlocutory appeals. W. Va. Code § 51-11-4(d)(8)." *Id.* at ___, 914 S.E.2d at 277 (citing Syl. Pt. 6, *Aaron W. v. Evelyn W.*, 251 W. Va. 1, 909 S.E.2d 36 (2024)).

13

Further, in *Webb*, the SCAWV discussed that

> [a]ppellate courts, in general, do not have jurisdiction to review interlocutory orders. *See Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 522, 745 S.E.2d 556, 560 (2013) ("Typically, interlocutory orders are not subject to this Court's appellate jurisdiction.") [footnote omitted] This is because "[t]he usual prerequisite for . . . appellate jurisdiction is a final judgment[.]" *Coleman v. Sopher*, 194 W. Va. 90, 94, 459 S.E.2d 367, 371 (1995). A final judgment or order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566, 401 S.E.2d 908, 912 (1991) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633, 89 L. Ed. 911 (1945)). The requirement for a final judgment, known as the "rule of finality," serves "to prohibit 'piecemeal appellate review of trial court decisions which do not terminate the litigation[.]'" *Coleman*, 194 W. Va. at 95 n.3, 459 S.E.2d at 372 n.3 (quoting *James M.B. v. Carolyn M.*, 193 W. Va. 289, 292, 456 S.E.2d 16, 19 (1995)).

*Id*. at __, 914 S.E.2d at 280-81 (2025). As established by the SCAWV in Syllabus Point 3 of *State ex. rel. West Virginia University Hospitals, Inc., et al. v. Hon. Phillip D. Gaujot, et al.*, 248 W. Va. 11, 886 S.E.2d 346 (2023)

> [u]nder W. Va. Code § 58-5-1 [1998], appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.

(citing Syl. Pt. 3 of *James M.B.*). Here, we find that the circuit court's October 3, 2024, and December 30, 2024, orders awarding summary judgment to Central and Builders as to G&G's claims for breach of contract, common law bad faith, and violations of the UTPA are properly within the jurisdiction of the ICA for review, pursuant to West

14

Virginia Code § 51-11-4(b)(1), as these orders are final orders of a circuit court entered after June 30, 2022.[18]

However, as to the May 28, 2024, order appealed by Central, we find that this order is interlocutory, as the order does not resolve the entirety of any claim between any of the parties below. *See Durm*, 184 W. Va. at 566, 401 S.E.2d at 912 (1991) (noting that under Rule 54(b) "an order may be final prior to the ending of the entire litigation on its merits if the order resolves the litigation as to a claim or party"). Rather, the May 28, 2024, order addresses only one of the several issues between Central and G&G: the existence of coverage. Given these facts, we would, under different circumstances, dismiss Central's appeal of the May 28, 2024, order as being improvidently permitted;

---

[18] We acknowledge, but find no merit in, Central's argument that the circuit court's October 3, 2024, order was not a "final judgment" order, as that order did not contain the "explicit language of Rule 54(b) [of the West Virginia Rules of Civil Procedure,]" designating it as a final appealable order. As the SCAWV discussed in *Butler v. Price*, 212 W. Va. 450, 453, 574 S.E.2d 782, 785 (2002) (per curiam), "the [c]ircuit [c]ourt's designation of its order as appealable . . . under Rule 54(b) is not dispositive." *See also Leadmine Community Church, et al. v. West Virginia Annual Conference of the United Methodist Church, et al.,* No. 24-ICA-475, 2025 WL 2240416, at *2 n.2 (W. Va. Ct. App. August 6, 2025) (memorandum decision) (citing *Durm* at Syl. Pt 2, in part) (The absence of an express Rule 54(b) of the West Virginia Rules of Civil Procedure certification "will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect."). Here, our review of the October 3, 2024, order establishes that said order resolves all of the issues between Central and G&G below, as summary judgment was awarded to Central on each of G&G's remaining claims (breach of contract, common law bad faith, and UTPA violations). Accordingly, there is no question as to the jurisdiction of this Court to review G&G's appeal of the October 3, 2024, order.

15

however, we find, as permissible under Rule 2 of the Rules of Appellate Procedure[19] and the practice of the SCAWV,[20] that judicial efficiency and economy and the need for substantial justice outweigh Central's procedural failure to bring its appeal as one invoking the jurisdiction of the ICA; thus, we convert Central's petition for appeal of the May 28, 2024, order from a direct appeal to a cross-assignment of error raised by Central in response to G&G's appeal of the circuit court's October 3, 2024, order.[21] In making

---

[19] Rule 2 of the West Virginia Rules of Appellate Procedure provides that

[i]n the interest of expediting a ruling, or for other good cause shown, the [ICA] or the [SCAWV] may suspend the requirements or provisions of any of these Rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction. These Rules shall be construed to allow the [ICA] or the [SCAWV] to do substantial justice.

[20] *See Gaujot*, 248 W. Va. at 17-18, 886 S.E.2d at 352-53 (converting an appeal of interlocutory order to a petition for writ of prohibition).

[21] While we acknowledge that the May 28, 2024, order is not a final order, we find that the consideration of the propriety of that order is essential for completion of a proper consideration of G&G's appeal of the circuit court's October 3, 2024, and December 30, 2024, orders. We also recognize that, given the procedural history in this matter, the typical concerns with an appeal of an interlocutory order are not present. Were we considering a simple direct appeal of the May 28, 2024, coverage order, we would be compelled to dismiss because the order did not resolve any substantive claims or end the litigation as to any party. However, in this case, Central appealed the May 28, 2024, order through the circuit court's March 4, 2025, Rule 54(b) certificate order. Since the circuit court entered this certification after its October 3, 2024, order granting summary judgment to Central, the issues that the May 28, 2024, order left unresolved between G&G and Central-the merits of G&G's claims against Central-had been resolved by the October 3, 2024, order at the time of Central's appeal. As the May 28, 2024, order resolved an issue-insurance coverage-necessary to the resolution of G&G's substantive claims, the merits of that order are within the scope of the appeal of the October 3, 2024, summary judgment order. Therefore, in consolidating these appeals and construing 25-ICA-111 as a cross-assignment of error in 24-ICA-441, the court has done no more than allow additional

this conversion we note the long and complex history of the ongoing litigation, the need for resolution of the outstanding appeal, and the multiple unsuccessful good faith attempts by counsel for Central to seek appellate review of the May 28, 2024, order (including filing a Writ of Prohibition before the SCAWV; attempting to file a previous appeal with the ICA; and moving for the circuit court to certify the May 28, 2024, order as a final appealable order under Rule 54(b) of the West Virginia Rules of Civil Procedure), and find that such facts establish "good cause" under Rule 2 of the West Virginia Rules of Appellate Procedure to permit the conversion. Having established this Court's jurisdiction to hear the underlying claims, we now turn to an examination of the standard of review.

## III. STANDARD OF REVIEW

Generally, we note that

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). Likewise, we apply a de novo standard of review to the circuit court's entry of summary judgment. Syl. Pt. 1, *Moorhead v. W. Va. Army Nat'l Guard*, 251 W. Va. 600, 915 S.E.2d 378 (2025). Summary judgment is appropriate when "there is no genuine issue as to any

---

briefing on an issue properly within the scope of the appeal, which it could have ordered on its own motion.

material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a), in part; *see also* Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.").

As to declaratory judgment actions, the SCAWV reviews a circuit court's entry of a declaratory judgment de novo, because the principal purpose of a declaratory judgment action is to resolve legal questions. Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).[22] In these consolidated appeals, like the SCAWV in *Marlin v. Wetzel County Bd. of Education*, 212 W. Va. 215, 220-221, 569 S.E.2d 462, 467-468 (2002),

> we are asked to review the circuit court's interpretation of an insurance contract. In Syllabus Point 2 of *Riffe v. Home Finders Associates, Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999), we stated that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower's court's grant of summary judgment, shall be reviewed *de novo* on appeal." "Determination of the proper coverage of an

---

[22] We acknowledge, as noted *supra*, that while G&G sought a declaratory judgment ruling from the circuit court as to Central's obligations to G&G under the Central policy issued to SBL in its *Third Amended Third-Party Complaint*, G&G did not renew its request for this declaratory judgment in its Fourth Amended Third-Party Complaint. However, we recognize that the circuit court's May 28, 2024, order addresses the duties and responsibilities of Central to G&G under the Central policy issued to SBL, similar to a declaratory judgment.

insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). *See also*, *Murray v. State Farm Fire & Cas. Co.*, 203 W. Va. 477, 482, 509 S.E.2d 1, 6 (1998).

With these standards in mind, we begin our review of the consolidated appeals by examining the circuit court's May 28, 2024, order, the first chronologically of the three orders on appeal.

## IV. DISCUSSION

### A. The May 28, 2024, order

As to the May 28, 2024, order, Central raises four assignments of error, which we will address in turn. In its first and second assignments of error, Central suggests that the circuit court erred when it concluded that Central was "estopped" from denying coverage or a duty to defend to G&G based on coverage limitations that were not included in the Central COI issued to G&G, namely the requirement of an insured to provide notice of a claim "as soon as practicable." Specifically, Central contends that, in reaching its conclusions as to the applicability of equitable estoppel, the circuit court misconstrued the SCAWV's rulings in *Marlin v. Wetzel County Bd. of Education*, 212 W. Va. 215, 569 S.E.2d 462 (2002), and *Nat'l Mut. Ins. Co., v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987) (*overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016).

As the SCAWV held in Syllabus Point 9 of *Marlin*,

19

> [a] certificate of insurance is evidence of insurance coverage, and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment upon a misrepresentation in the certificate.

Below, the circuit court found that Central did not set forth or disclose in the COI issued to G&G all of the "limitations" of coverage within the Central policy, particularly excluding the duty of G&G to provide notice of any claims under the policy "as soon as practicable." Given such an occurrence, the court concluded that, per *Marlin* and *McMahon*,[23] Central was estopped from raising G&G's failure to provide reasonable notice of the Lawsons' underlying claims as a coverage defense. We disagree.[24]

---

[23] In *McMahon*, at Syllabus Point 10, the SCAWV held that "[a]n insurer wishing to avoid liability on a policy . . . must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured."

[24] For purposes of clarification, we find no error in the circuit court's application of the law of the State of West Virginia (as opposed to North Carolina), as West Virginia had a more significant relationship to the transaction at issue. We agree with the circuit court's determination that, by virtue of the issuance of a COI to G&G, Central undertook to insure a West Virginia company; that the alleged construction defects occurred exclusively in West Virginia; and that the underlying action was filed in West Virginia. Moreover, we concur with the circuit court's acknowledgement that under West Virginia law, "damages [bodily injury or property damage] resulting from defective workmanship" constitute an "occurrence" for coverage under a contractor's commercial general liability policy. *See* Syllabus Point 6, *Cherrington v. Erie Insurance Property and Casualty Co.*, 231 W. Va. 470, 745 S.E.2d 508 (2013).

20

Based upon our review of the record and applicable law, we find that the circuit court's equitable estoppel ruling misstates and misconstrues the SCAWV's holdings in *Marlin* and *McMahon*. Further, we find that it unnecessarily expands the holdings of those cases and the resultant duties of insurers (and their agents) doing business in West Virginia. As the SCAWV held in Syllabus Point 5 of *Potesta v. U.S.F. & G.*, 202 W. Va. 308, 504 S.E.2d 135 (1998), "[g]enerally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract."[25] However, the *Potesta* Court recognized that

> [e]xceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made at the policy's inception resulted in the insured being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the insured without a reservation of rights; and (3) the insurer has acted in bad faith.

*Marlin*, 212 W. Va. at 225, 569 S.E.2d at 472 (quoting *Potesta* at Syllabus Point 7). Below, the circuit court applied the SCAWV's ruling in *Marlin*, without the predicate finding of a misrepresentation that was relied upon by an insured.[26] Instead, the court simply stated

---

[25] The *Marlin* Court noted that "[t]he rationale for this rule is that an insurance company should not be made to pay for a loss for which it has not charged a premium. *See* 'Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by its Terms or Expressly Excluded Therefrom,' 1 A.L.R.3d 1139, 1144 (1965)."

[26] Below the circuit court did not address scenarios (2) and (3) in Syl. Pt. 8 of *Marlin* or any other exception to the general rule that estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract. Thus, on appeal, we limit

21

that *Marlin* "addressed similar behavior[,]" thus likening Central's alleged failure to specifically denote notice requirements on the face of the COI, to the intentional act of misrepresentation perpetrated by the insurance agent in *Marlin*. We find such a comparison unavailing.

Moreover, in awarding summary judgment to G&G on the coverage issue involving Central, the circuit court expanded the duties of insurers by finding that, per *McMahon*, a West Virginia insurer "must bring all exclusions and limitations on which it seeks to rely to the attention of the insured." However, the actual finding of *McMahon* addresses exclusions only and not "limitations[,]" a term that was undefined by the circuit court. Here, Central has not denied coverage to G&G under any "exclusions" within the Central policy. In fact, as noted by Central, none of the exclusions within the Central policy "are even relevant to the coverage issues in this case and none were" referenced by the circuit court in its May 28, 2024, order. Accordingly, we find the circuit court's reliance upon *McMahon* misplaced, as the court misstated and misinterpreted the findings of that case.

Wherefore, based on the foregoing, we find that the circuit court erred in awarding summary judgment to G&G on the theory of equitable estoppel. However, such error is not dispositive of the coverage issue before us, as we must now address the circuit

our review to only the first scenario identified in Syl. Pt. 8 of *Marlin*, which requires the misrepresentation of the insurer or its agent.

22

court's determination as to reasonableness of the notice of the Lawsons' claims that G&G provided to Central, which are addressed in Central's third argument on appeal.

In this argument, Central contends that the circuit court erred in concluding that G&G's provision of notice to Central of the Lawsons' claims against G&G and SBL was reasonable. In *Colonial Ins. Co. v. Barrett*, 208 W. Va. 706, 711, 542 S.E.2d 869, 874 (2000), the SCAWV generally recognized that that "[t]he satisfaction of the notice provision in an insurance policy is a condition precedent to coverage for the policyholder." Here, Central contends that it first became aware of the potential claims against SBL related to the Lawson project when it received a letter from G&G's counsel (dated June 21, 2019), demanding defense and indemnification of G&G for such claims. Central, after investigating, wrote to G&G's counsel, by letter dated August 21, 2019, and denied coverage. On appeal, Central suggests that the G&G knew of the potential "alleged issues" with SBL's work on the Lawson project as early as May of 2012, but did not place Central on notice of such claims until 2019, a period of more than seven years, a delay that was indisputably unreasonable.[27]

---

[27] At the very least, Central argues that G&G knew of the Lawsons' claims related to work completed by SBL on the Lawson project when the Lawsons' counterclaim was served in June of 2014. Further, Central contends that G&G "possessed all the information necessary to put Central on notice" of these claims by virtue of Central's COI, dated May 4, 2011.

Conversely, G&G argues its notice to Central of the underlying claims was reasonable. G&G is critical of the fact that Central does not acknowledge that there was a need for discovery in the underlying case, with regard to the identification of defects in the Lawson project and the subcontractor/supplier responsible for said defect, which did not begin until 2017 (given the SCAWV's consideration of G&G's appeal in *G&G v. Lawson)*. Further, G&G argues that the complexity of the case, which involved at least nine subcontractors and their insurers (often multiple insurers), increased the time necessary to gather information regarding the Lawsons' underlying claims. Given such facts, G&G claims that its notice was reasonable.

As to a determination of reasonableness, the SCAWV in *Travelers Indem. Co. v. U.S. Silica Co.*, 237 W. Va. 540, 546, 788 S.E.2d 286, 292 (2015), stated that

> [i]n cases which involve liability claims against an insurer, several factors must be considered . . . [to] determine if the delay in notifying the insurance company will bar the claim against the insurer. The length of the delay in notifying the insurer must be considered along with the reasonableness of the delay. If the delay appears reasonable in light of the insured's explanation, the burden shifts to the insurance company to show that the delay in notification prejudiced their investigation and defense of the claim. If the insurer can produce evidence of prejudice, then the insured will be held to the letter of the policy and the insured barred from making a claim against the insurance company. If, however, the insurer cannot point to any prejudice caused by the delay in notification, then the claim is not barred by the insured's failure to notify.

Below, the circuit court made the determination that the notice of the Lawsons' claims G&G provided to Central was reasonable. While Central and G&G take no issue with the

24

circuit court being the arbiter of the reasonableness of notice, we find error in such action. The SCAWV has long held that "[t]he question of whether an insurance company was notified within a reasonable time period is, generally, a question for the finder of fact." *Colonial*, 208 W. Va. at 712, 542 S.E.2d at 875 (citing *Dairyland Ins. Co., v. Voshel*, 189 W. Va. 121, 124, 428 S.E.2d 542, 545 (1993)); *see also Travelers Indem. Co. v. U.S. Silica*, 237 W. Va. 540, 547, 788 S.E.2d 286, 293 (2015) (recognizing that the issue of reasonableness is typically a jury question); *State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 561, 396 S.E.2d 737, 742 (1990) ("Generally, whether notice has been given to an automobile insurer within a reasonable period of time is an issue to be resolved by the fact finder." (citations omitted)).

While we acknowledge that the *Travelers* Court reasoned that, under the facts and circumstances present in that particular case (undisputed egregious facts and the sophisticated nature of the parties), that reasonableness of notice was an appropriate consideration to be made by the court as matter of law, we are mindful of the SCAWV's indication in *Travelers* that it did "not intend to change the customary determination of reasonableness by the fact finder." *Id.* at 547, 788 S.E.2d at 293. Further, we are mindful of the SCAWV's long held tenet that "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact . . . when facts, though undisputed, are such that reasonable men may draw different conclusions from them." Syl. Pt. 4, *Webb,* 251 W. Va. at ___, 914 S.E.2d at 277 (citing Syl. Pt. 2, *Koontz v. Long*, 181 W. Va. 800, 384 S.E.2d 837 (1989) (per curiam).

Here, while Central and G&G both suggest that there are no facts in dispute as to the question of reasonableness, we note that even with an agreement as to the facts in dispute there are drastically different conclusions that can be drawn from such facts, as exhibited by the parties' differing positions as to reasonableness. Thus, we find that under the facts and circumstances present in the underlying case, and given the SCAWV's holding in *Webb*, the circuit court erred in making the determination as to the reasonableness of notice below, as such a determination was the province of a jury and not the court. Accordingly, we vacate the circuit court's determination of reasonableness set forth in its May 28, 2024, order and remand this matter to circuit court, and direct that the question of reasonableness of notice be presented to a jury for determination.[28]

In its last assignment of error, Central argues that the circuit court erred in finding that Central was not prejudiced by the unreasonable notice of the Lawsons' claims provided by G&G. As we have vacated the circuit court's determination of reasonableness of notice, the issue of prejudice associated with such a determination is now moot and thus not properly before this Court for consideration. Accordingly, we decline to address Central's fourth assignment of error and direct that the circuit court address the question of prejudice in the future proceedings directed in this case, if applicable.

---

[28] We make no specific findings as to the reasonableness of the notice G&G provided to Central below, and this decision should not be read to such end.

26

### B. The October 3, 2024, and December 30, 2024, orders

On appeal, G&G raises five assignments of error in its separate appeals against Central and Builders, appealing the circuit Court's October 3, 2024 (Central), and December 30, 2024 (Builders), orders. The assignments of error raised by G&G against Central are identical to the assignments of error G&G raised against Builders. As such, we will address the assignments of error related to Central and Builders together, for the purposes of brevity and efficiency.[29]

In its first two assignments of error, which are interrelated and will be addressed together, G&G argues that the circuit court erred in finding that G&G had no valid claim for breach of contract against Central and Builders. Specifically, G&G argues that the circuit court erred in making its finding of no breach of contract given its misplaced reliance upon the SCAWV's memorandum decision in *Soaring Eagle*.

In *Soaring Eagle*, the SCAWV affirmed an award of summary judgment to an excess insurer as to an insured's claims against it for breach of contract and unfair

---

[29] We find that our opinion regarding the propriety of the circuit court's award of summary judgment to Central as to G&G's claims for breach of contract, common law bad faith, and violations of the UTPA is not an advisory opinion. Specifically, if the circuit court's order of October 3, 2024, is affirmed in future proceedings any remand for the purpose of evaluating coverage would be moot. Additionally, it is important to note that G&G's claims for breach of contract, common law bad faith, and violations of the UTPA against Central are identical to the claims G&G alleged against Builders, except that there are no coverage issues with regard to Builders (as Builders has not appealed the circuit court's order finding coverage for G&G under the Builders' policy).

claims practices. In making this ruling, the Court found that an insured could not maintain claims against its insurer for common law or statutory bad faith, or breach of contract, where the insured has been provided a defense at no cost to the insured and a settlement was reached at no cost to the insured. Here, Builders and Central contend, and the circuit court agreed, that G&G was always defended in the underlying action at no cost to G&G and G&G was fully indemnified for all claims at no cost to G&G and, accordingly, G&G's claims for breach of contract, common law bad faith, and UTPA violations against Central and Builders were not sustainable under *Soaring Eagle*. We disagree.

Below, the circuit court's reliance upon *Soaring Eagle* was based upon the false premise that the facts therein were similar to the facts in the instant case.[30] Our review of the record establishes that the facts in the underlying case are distinguishable from *Soaring Eagle* in a number of critical ways. In *Soaring Eagle*, a developer entered into a contract that required the general contractor on the project to defend and indemnify the developer, but also mandated that the general contractor require any subcontractor to defend the developer as well. Each of the insurers for the subcontractors complied with that requirement and defended the developer on a primary basis throughout that litigation. Accordingly, the SCAWV found that the "developer had no valid claim for attorney's fees

---

[30] On appeal both Builders and Central contend that G&G was in virtually identical circumstances as the developer in *Soaring Eagle* and the insurers were in virtually the same position as the insurers in *Soaring Eagle*; thus, this Court should "abide" by the *Soaring Eagle* decision and affirm the circuit court's ruling.

28

against the general contractor's insurer, which had excess coverage to that coverage provided by the carriers for the subcontractor." Thus, there was no breach, since the insurer at issue in *Soaring Eagle* had no primary duty to defend the developer. However, in the underlying case, we are not dealing with excess carriers but carriers (Central and Builders) who had a primary duty to defend G&G.[31]

*Soaring Eagle* is also distinguishable because all of the subcontractors in that case complied with the contractual defense and indemnification requirement on a primary basis, such that the SCAWV found that the developer had no valid claim for attorney's fees against the general contractor's insurer – who provided excess coverage. Both Central and Builders argue that like the developer in *Soaring Eagle*, G&G was "defended by the insurers for the subcontractors as contemplated by the subcontracts." However, both Central and Builders fail to acknowledge that unlike Travelers (the insurer in *Soaring Eagle*), they too were "insurers for the subcontractor" who were to provide insurance "as contemplated in the subcontracts." Moreover, G&G, unlike the developer in *Soaring Eagle* (who did not contribute anything as consideration for the settlement of the claims against it) contributed directly to the settlement of the Lawsons' claims against G&G and SBL, as G&G released $250,000 of its mechanic's lien against the Lawsons,

---

[31] G&G cites to the agreement between SBL and the Lawsons and Archetype and the Lawsons which required the subcontractors to name G&G as an additional insured "as primary coverage on [the subcontractor's] commercial general liability and excess insurance policies." All claims at issue herein, were brought under the subcontractor's commercial general liability policies, where G&G was to be a primary insured.

29

which we find is a clear "cost" of that settlement.[32] Additionally, we note that both Builders and Central did not provide a defense and indemnification to G&G in the underlying action, until G&G obtained a ruling by the circuit court confirming the existence of coverage for G&G under the Builders and Central policies. Thus, G&G was required to institute a legal action against Builders and Central to obtain the relief to which G&G was entitled, as evidenced by the Builders and Central COIs issued to G&G.[33]

---

[32] We acknowledge, but find no merit in, Central's arguments supporting the circuit court's findings regarding the release of part of G&G's mechanic's lien. In its October 3, 2024, order the circuit court determined that since such lien was not part of the indemnification owed under the Central policy (and was not a "claim" asserted by anyone against G&G) it was thus irrelevant to the issues here and "could not be considered as part of the evaluation of whether G&G has been fully indemnified for the claims asserted against it by the Lawsons." We disagree. If we were to adopt Central's arguments and the circuit court's finding in this regard, we would have to necessarily conclude that G&G's release of part of its mechanic's lien against the Lawsons was just merely a gift to the Lawsons, and was not made in consideration of settlement of the underlying claims. We find such arguments and findings disingenuous, without factual support, and void of logic.

Instead, we find, as is factually supported by the record, that G&G's release of a part of its mechanic's lien against the Lawsons was part of the settlement reached of the claims of the Lawsons against G&G and SBL. The language of the Settlement Agreement and Mutual Release itself establishes that the release of part of the mechanic's lien was "consideration" and made "in exchange" for a release of the Lawsons' claims against G&G and SBL. *See* fn. 15 *supra*. Moreover, the SCAWV has recognized that "[a] compromise of a controversy is a valuable consideration to sustain a contract." Syl. Pt. 3, *Sanders v. Roselawn*, 152 W. Va. 91, 159 S.E.2d 784 (1968). Thus, we reverse the circuit court's ruling in this regard and find that G&G's release of part of its mechanic's lien should be considered as part of the evaluation of whether G&G has been fully indemnified for the claims asserted against it.

[33] Under Syl. Pt. 1, *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 352 S.E.2d 73 (1986), an insured who "substantially prevails" may recover reasonable attorney fees for vindicating his or her claims, along with damages for aggravation and inconvenience, and "net economic loss caused by the delay in settlement." *Hayseeds* does not authorize recovery of attorney fees incurred for pursuing a bad faith claim against the

30

Accordingly, given the substantial factual distinctions between *Soaring Eagle* and the underlying case, we find that the circuit court's reliance upon *Soaring Eagle* was misplaced. Moreover, we find error with the circuit court's failure to consider G&G's contribution to settlement of the Lawsons' claims against G&G and the fact that G&G was forced to initiate litigation against Builders and Central to obtain a defense and indemnification. Therefore, we vacate the circuit court's award of summary judgment to Builders and Central and direct that the circuit court re-examine this matter without reference to *Soaring Eagle* and with particular consideration of the specific facts of the underlying case.

In its third assignment of error, G&G argues that the circuit court erred in finding the collateral source rule did not apply to the payment made by other subcontractors' carriers toward the defense of G&G. In other words, G&G argued that the collateral source rule applied such that Central and Builders cannot be credited with the defense costs and indemnity paid by other insurance carriers. Below, the circuit court concluded, in both the October 3, 2024, and December 30, 2024, orders that the collateral source rule "does not operate here." Specifically, the court noted that the SCAWV "has not applied the collateral source rule to a case such as this where the insured received a defense and indemnity at no cost to it."

---

insurer. While the *Soaring Eagle* Court did not permit the recovery of *Hayseeds* damages, the facts of the underlying case are distinctly different than the facts of *Soaring Eagle*, such that the circuit court below must consider any *Hayseeds* damages which G&G can establish.

31

On appeal, G&G, citing the SCAWV's opinion in *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986), argues that it is entitled to recover its pro-rata share of payments made by other carriers for the defense of G&G under the collateral source rule. In *Ilosky v. Michelin Tire Corp.*, 172 W. Va. 435, 446, 307 S.E.2d 603, 615 (1983), the SCAWV explained that

> [s]imply put, the collateral source rule excludes payments from other sources to plaintiffs from being used to reduce damage awards imposed upon culpable defendants. The rule is premised on the theory that it is better for injured plaintiffs to receive the benefit of collateral sources in addition to actual damages than for defendants to be able to limit their liability for damages merely by the fortuitous presence of these sources.

The *Ilosky* court further noted

> The purpose of the collateral source doctrine is to prevent reduction in the damage liability of defendants simply because the victim had the good fortune to be insured or have other means of compensation.

*Id.* at 447, 307 S.E.2d at 615.

G&G argues under the collateral source rule it should be able to recover its pro-rata share of attorney's fees from Builders and Central. Builders and Central should not be able to "take advantage" and get a "free pass" simply by having the luck that someone else complied with a duty all the insurers had. We disagree and find no error in the circuit court's decision as to the inapplicability of the collateral source rule. Here, as G&G was fully defended below at no cost to it (without consideration of the contribution G&G made to any settlement and any funds it may have expended to "substantially prevail" in its coverage claims against Builders and Central), it has no claim for recovery

32

of attorney's fees related directly to its defense, which it did not incur. Instead, any claims for recovery of G&G attorney's fees paid by some subcontractor's insurers and not others, is a claim belonging to the subcontractor's insurers who funded the defense, not G&G, who expended no such funds.

Additionally, any claims by G&G for attorney's fees it has incurred in the defense of the underlying action are contractual in nature. The collateral source rule is generally not applicable in breach of contract cases. *See Owners Ins. Co v. McGraw*, 233 W. Va. 776, 785-786, 760 S.E.2d 590, 599-600 (2014) (per curiam) (Davis, C.J., concurring). Accordingly, we find no error in the circuit court's determination as to the inapplicability of the collateral source rule.

In its last two assignments of error, G&G is critical of the circuit court's refusal to permit additional discovery, despite the affidavit of G&G's counsel noting the need for additional discovery, and argues that summary judgment was improper given that genuine questions of fact remain, which should be determined by a jury. Given our rulings above reversing, in part, and vacating, in part, the circuit court's October 3, 2024, and December 30, 2024, orders, we find these assignments of error to be moot and they will not be addressed by this Court. Rather, we defer to the circuit court's determinations as to the need for additional discovery and the existence of genuine issues of material fact in that court's consideration of Builders' and Central's motions for summary judgment on remand.

33

## V.     CONCLUSION

Based on the foregoing, we make the following findings with regard to the orders of the Circuit Court of Cabell County at issue in these consolidated appeals:

1. With regard to the circuit court's May 28, 2024, order, we reverse the circuit court's ruling as to the application of equitable estoppel; we vacate the circuit court's determination of reasonableness of notice and prejudice; and we remand that matter to circuit court and direct that the determination of reasonableness of notice be presented to a jury for consideration.

2. As to the October 3, 2024, order, we reverse, in part, the circuit court's award of summary judgment to Builders and remand the case to circuit court for further proceedings consistent with this opinion, which is to include the court's consideration of G&G's alleged *Hayseeds* damages. We affirm, in part, the circuit court's determination that the collateral source rule was inapplicable.

3. As to the December 30, 2024, order, we reverse, in part, the circuit court's award of summary judgment to Central, as well as the circuit court's determination as to the consideration of G&G's release of part of its mechanic's lien in consideration of settlement, and remand the case to circuit court for further proceedings consistent with this opinion, which is to include the court's

34

consideration of G&G's alleged *Hayseeds* damages. We affirm, in part, the circuit court's determination that the collateral source rule was inapplicable.

Affirmed, in part, Reversed, in part, and Remanded with directions.